UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY FRANKLIN,                    :
                                     :CIVIL ACTION NO. 3:16-CV-2284
          Plaintiff,                 :
                                     :(JUDGE CONABOY)
          v.                         :
                                     :
NANCY A. BERRYHILL,[1]               :
Acting Commissioner of               :
Social Security,                     :
                                     :
          Defendant.                 :
                                     :

_____

### MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI. (Doc. 1.) Plaintiff filed applications for benefits on June 17, 2015, alleging a disability onset date of September 1, 2014. (R. 11.) After Plaintiff appealed the initial denial of the claims, a hearing was held on May 23, 2016, and Administrative Law Judge ("ALJ") Patrick S. Cutter issued his Decision on May 7, 2015, concluding that

_____

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure which addresses the substitution of parties when a public officer is replaced, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which states that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."

Plaintiff had not been under a disability during the relevant time period.[2]  (R. 23.)  Plaintiff requested review of the ALJ's decision which the Appeals Council denied on July 12, 2016.  (R. 1-6, 7.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

Plaintiff filed this action on November 15, 2016.  (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ committed legal error when he failed to provide an explanation as to why he applied the light grid rule; and 2) the ALJ's finding is an RFC for sedentary work and Plaintiff must be found disabled under the Medical-Vocation rules if he is limited to sedentary work.  (Doc. 12 at 3.)  After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted.

## I. Background

Plaintiff was born on March 9, 1962, and was fifty-two years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  (R. 17.)  He has a high school education and past relevant work as a supervisor, materials handler supervisor, and warehouse supervisor.  (*Id.*)

---

[2] Plaintiff did not appear for the hearing.  (R. 14.)  In response to the Notice to Show Cause for Failure to Appear, Plaintiff responded that he did not have access to transportation. (R. 14, 133.)

## A.   *Medical Evidence*

Plaintiff presents sparse medical evidence, simply listing medical conditions and briefly reviewing the findings of a consultative examiner, Spencer Long, M.D.  (*See* Doc. 12 at 2-3.) Conditions identified are Diabetes Mellitus, diabetic peripheral neuropathy, diabetic retinopathy with right-eye blindness, and amputation of his great right toe due to diabetes complications. (*Id.* at 2.)  Defendant summarizes medical evidence of record, particularly that relied upon by ALJ Cutter.  (*See* Doc. 13 at 2-7.) In his reply brief, Plaintiff did not object to Defendant's factual recitation.  (*See* Doc. 14.)  Therefore, the Court will set out the medical evidence summarized by Defendant.[3]

> Throughout this decision (e.g. Tr. 14, 16), the ALJ referenced findings of Meghan L. Edwards, PA-C, Plaintiff's primary care provider, who conducted several examinations during the relevant period:
>
> - On October 28, 2014, PA Edwards noted that Plaintiff's past medical history included (among other things) hypertension, gastroesophageal reflux disease (GERD), and diabetic retinopathy (Tr. 239).  On examination, PA Edwards found pale and swollen nasal turbinates and thick post-nasal drip related to a probable upper respiratory infection (Tr. 239).  PA Edward's objective physical examination findings were

---

[3] An abbreviated review of evidence is appropriate because Plaintiff's claimed errors do not point to problems with the ALJ's evidence review.

3

otherwise completely unremarkable (Tr. 239);

- On March 13, 2015, Plaintiff complained of sinus pressure and congestion, and PA Edwards found red and swollen nasal turbinates, with a remarkable appearing throat (Tr. 237). But, PA Edward's objective physical examination findings were otherwise completely unremarkable (Tr. 237);

- On June 10, 2015, Plaintiff complained of an ongoing cough for several weeks, though PA Edwards objective physical examination findings (including as to Plaintiff's pulmonary function) were completely unremarkable (Tr. 235);

- On July 24, 2015, PA Edward's objective physical examination findings were completely unremarkable (Tr. 295); and

- On September 11, 2015, PA Edwards noted that Plaintiff was doing well, and his blood pressure and blood sugars were well controlled (Tr. 283). Once again, her objective physical examination findings were completely unremarkable (Tr. 284).

Consultative examiner Spencer Long, M.D., also examined Plaintiff in September 2015 and noted his slow and antalgic gait; and Plaintiff reported pain bilaterally on a straight-leg raise test at 45 degrees; but Plaintiff was in no acute distress; his stance was normal; he could get on and off the examination table and rise from a chair without difficulty; he exhibited no evident joint deformity; he had no scoliosis, kyphosis or abnormality in his thoracic spine; he had no trigger points, sensory

4

deficit, or muscle atrophy; his hand and finger dexterity was intact; his strength was 5/5 in his arms and legs; and his grip strength also was 5/5 (Tr. 255-56).

In view of this evidence, throughout his decision, the ALJ analyzed Plaintiff's impairments. With respect to peripheral neuropathy, the ALJ noted in particular that Dr. Long had identified Plaintiff's normal stance, as well as his capacity to get on and off the examination table or rise from a chair (Tr. 14, referencing Tr. 255). Similarly, with respect to GERD and hypertension, the ALJ aptly noted an absence of ongoing evidence functional limitations (Tr. 14). Dr. Long had noted that Plaintiff was negative for heart disease, and PA Edwards discussed in September 2015 that Plaintiff was doing well in controlling his blood pressure (Tr. 14, referencing Tr. 254, 283).

With respect to diabetes, the ALJ noted Dr. Long's finding an absence of sensory of motor deficits, and indeed, full strength (Tr. 15, referencing Tr. 256). He also pointed out PA Edward's finding that Plaintiff's blood sugars were well controlled (Tr. 15, referencing Tr. 283).

With respect to the condition of Plaintiff's right eye, the ALJ noted that Plaintiff described total right-eye blindness, and that he did not drive as the result of it (Tr. 16, referencing Tr. 31). The ALJ also explained that Dr. Long had assessed total right-eye blindness (Tr. 16, referencing Tr. 254). As Dr. Long detailed, Plaintiff had undergone laser surgery, but it had not repaired the vision in his right eye (Tr. 16, referencing Tr. 254).

However, with respect to the condition of Plaintiff's left eye, the ALJ pointed to PA Edward's statement in June 2015 and his diabetic retinopathy was controlled (Tr. 16, referencing Tr. 235). Although at the time

5

Plaintiff's diabetes was itself not controlled (Tr. 235), withing several months his blood sugars also were under good control (Tr. 283). Dr. Long had noted, as the ALJ explained, that Plaintiff had undergone successful left-eye laser surgery (Tr. 16, referencing Tr. 254). The ALJ also found that Plaintiff retained a capacity to shop, do laundry, and attend to his personal care (Tr. 16, referencing Tr. 195-97).

With respect to Plaintiff's right-shoulder and right-arm complaints, the ALJ noted that Dr. Long had assessed no sensory or motor deficits (Tr. 16, referencing Tr. 255-56). He also exhibited 5/5 arm strength (Tr. 16, referencing Tr. 256). But, the ALJ acknowledged and credited Plaintiff's testimony that he had obtained a recent injection for right shoulder pain (Tr. 16, referencing Tr. 32).

(Doc. 13 at 2-7.)

## B.   *Opinion Evidence*

Dr. Long opined that Plaintiff could lift up to 10 pounds occasionally, but never any higher weight, and he could never carry any weight. (R. 258.) He noted that these limitations were due to left shoulder pain and "DJD."[4] (R. 258.) Dr. Long found that Plaintiff could stand and walk for five minutes without interruption and could perform either function for a total of fifteen minutes in an eight-hour day. (R. 259.) He found that Plaintiff could sit for thirty minutes without interruption and

---

[4] Because Dr. Long's diagnosis included "left shoulder pain with degenerative joint disease," the Court assumes DJD is "degenerative joint disease" as no other diagnosis would be consistent with the letters identified. (*See* R. 256-58.)

could sit of a total of eight hours in an eight-hour day.  (*Id.*)
Dr. Long noted that Plaintiff required the use of a cane to
ambulate, he could ambulate for fifty feet without a cane, the use
of a cane was medically necessary, and he could use his free hand
to carry small objects.  (*Id.*)  He indicated that his assessments
were supported by medical or clinical findings of  bilateral foot
pain and bilateral peripheral neuropathy.  (*Id.*)  Regarding use of
his hands, Dr. Long opined that left shoulder pain and DJD limited
Plaintiff to occasionally reaching overhead and pushing/pulling,
and frequently reaching otherwise, handling, fingering, and feeling
with his right hand; findings for the left hand differed in that he
could never reach overhead and occasionally reach otherwise.  (R.
260.)  Dr. Long concluded that, due to foot pain and poor balance,
Plaintiff could never climb ladders or scaffolds, balance, stoop,
kneel, crouch, or crawl, and could occasionally climb stairs and
ramps.  (R. 261.)  He also concluded that Plaintiff could never be
exposed to unprotected heights, moving mechanical parts, operating
a motor vehicle, extreme cold, extreme heat, and vibrations; he
could occasionally be exposed to dust, odors, fumes and pulmonary
irritants; and he could frequently be exposed to humidity and
wetness.  (R. 262.)  These assessed limitations were due to
peripheral neuropathy, diabetic retinopathy, and poor balance.  (R.
262.)  Dr. Long also concluded that Plaintiff's physical
impairments would affect his ability to climb a few steps at a

7

reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle and use paper files. (R. 263.) He indicated that the medical findings supporting the assessments were bilateral foot pain, diabetes, peripheral neuropathy, diabetic retinopathy, and poor balance. (*Id.*)

## C. *Hearing Testimony*

At the May 23, 2016, hearing before ALJ Cutter, Plaintiff testified that his biggest problems were his balance and dizziness. (R. 30.) He explained that the balance issue was persistent throughout the day and the dizziness was sporadic. (R. 31.) Plaintiff said he could stand and/or walk for about ten minutes at a time, and he tries not to sit too much. (R. 32.) He also identified right shoulder problems. (R. 32-33.)

When asked about his living situation and personal care, Plaintiff said he lives alone and he can handle personal care but his uncle comes to help him with things around the house like laundry, cooking, doing dishes, and cleaning. (R. 33.) He explained that the problem with performing these tasks was his balance and dizziness. (R. 35.)

Regarding handling and fingering things, Plaintiff said that he is right-handed but uses his left hand most of the time because of the pain that shoots up his arm on the right side. (R. 34.) He also said that, if he drops something, it stays on the floor until

8

his uncle comes over.  (R. 34-35.)

Plaintiff's attorney pointed out that Plaintiff had a long and steady work history for many years with significant earnings and he would be working if he could.  (R. 39.)

ALJ Cutter then questioned Vocational Expert Andrew Caporale and asked him to consider a hypothetical person with Plaintiff's

> vocational profile and the residual
> functional capacity to perform a range of
> light work as defined in the regulations
> subject to the following limitations.  The
> individual can continuously sit, only
> occasionally stand, walk, climb ramps or
> stairs, balance, stoop, kneel, crouch and
> crawl, cannot perform any overhead use of
> both . . . arms, can only frequently reach,
> handle, finger, feel, push or pull
> bilaterally, can never work at unprotected
> heights, operate motor vehicles, tolerate
> exposure to temperature extremes or vibration
> and the individual can perform work that does
> not require depth perception or color vision
> on the right or field of vision on the right
> and can perform work that involves only
> occasional accommodation.

(R. 41-42.)  The VE testified that such an individual would not be able to perform Plaintiff's past relevant work but there were other unskilled jobs in the national economy that he could perform.  (R. 42.)  The VE identified jobs "that are light occupations that are performed in a seated position or they have a sit, stand option associated with them."  (R. 43.)  He specifically identified positions as a conveyor line bakery worker, parking lot cashier, and information clerk.  (*Id.*)

When ALJ Cutter added that the hypothetical individual would

9

be off task about two hours per day due to the need to rest in the morning and afternoon, the VE responded that the individual would not be able to work.  (R. 44.)  The VE said the same would be true if the individual were expected to be absent twenty percent of the work time or if the individual could only frequently maintain concentration, persistence, or pace.  (R. 45.)  Finally, the ALJ asked whether any of Plaintiff's past work would be available if he dropped the exertional level in the first hypothetical to sedentary and added the need for the use of a cane for long ambulation. (*Id.*)  The VE responded that past work would not be available and no skills of the past work would transfer within that RFC.  (R. 46.)

**D.   *ALJ Decision***

In his May 7, 2015, Decision, ALJ Cutter made the following Findings of Fact and Conclusions of Law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2.   The claimant has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3.   The claimant has the following severe impairments: diabetes mellitus; right eye blindness; and right shoulder tendonitis (20 CFR 404,1520(c) and 416.920(c)).
>
> 4.   The claimant does not have an impairment or combination of impairments that meets

10

or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional standing, walking, climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant can continuously sit. He is precluded from overhead use of his bilateral arms. The claimant is limited to frequent reaching, handling, fingering, feeling, pushing, and pulling bilaterally. He should never work at unprotected heights, operate motor vehicles, or tolerate exposure to temperature extremes or vibration. The claimant is limited to work not requiring depth perception, color vision on the right, or field of vision on the right. Furthermore, he can perform work that involves only occasional accommodation.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 9, 1962 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of

disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(R. 13-19.)  Other relevant portions of the ALJ's Decision will be referenced in the Discussion section of this Memorandum.

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[5]  It is necessary for the

---

[5]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step

five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 17-18.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for

14

> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . .

15

. the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (a remand is not required where it would not affect the outcome of the case.). An ALJ's decision can

only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ committed legal error when he failed to provide an explanation as to why he applied the light grid rule; and 2) the ALJ's finding is an RFC for sedentary work and Plaintiff must be found disabled under the Medical-Vocation rules if he is limited to sedentary work. (Doc. 12 at 3.)

### A. Grid Rule Explanation

Plaintiff first asserts the ALJ erred as a matter of law when he failed to provide an explanation for applying the light grid rule instead of the sedentary grid rule despite a significant erosion of the occupational base for unskilled light work. (Doc. 12 at 4.) He states that his

> RFC is essentially sedentary due to the ALJ's restriction . . . to only "occasional" standing and walking. . . . However, at the very least, the RFC fell between the sedentary (the restriction to no more than occasional standing/walking in an 8 hour work day) and light levels (the restriction to lifting/carrying 20 pounds occasionally and 10 pounds frequently and generally standing and walking for up to 6 hours of the workday).

(Doc. 12 at 4 (citing 20 C.F.R. §§ 404.1567(a),(b), 416.967(a),(b);

17

SSR 83-10, 1983 WL 31251, at *5-6).)[6]  Plaintiff maintains that

explanation in this situation is required by the POMS, stating that

> [i]n the section addressing RFCs falling
> between two opposing grid rules the POMS
> states in bold font and all capital letters
> the following: "IMPORTANT: Always explain the
> basis for your conclusions."  POMS DI
> 25025.015.D.  The ALJ's decision is defective
> as a matter of law because it does not
> provide any of the explanation that the POMS
> provision mandates.

(Doc. 12 at 6.)

The Court concurs with Defendant that this argument is without

merit.  (Doc. 13 at 16.)  This Circuit has consistently concluded

that POMS do not have the force of law.  *Bordes v. Comm'r of Soc.*

*Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (not precedential)

(listing cases); *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2

(3d Cir. 1996).

Even though Plaintiff contends that cases relying on decisions

issued before the promulgation of SSR 13-2p, 2013 WL 621536, at

*15, which he says "makes clear that, regardless of the context,

the Agency" requires adjudicators to follow agency policy set out

in SSRs, Ars, and other instructions, such as POMS, Plaintiff cites

no authority which suggests that POMS provisions are *judicially*

enforceable.  (*See* Doc. 14 at 3-4.)  Courts in this Circuit

---

[6] The substance of Plaintiff's argument that an "outright
award" should occur (Doc. 12 at 5) is repeated with his second
claimed error and will be addressed in the next section of this
Memorandum.

continue to follow *Bordes* and *Edelman* regarding the judicial enforceability of internal agency guidance. *See*, *e.g.*, *Osborne v. Berryhill*, Civ. A. No. 16-96, 2017 WL 818846, at *2-3 (W.D. Pa. Mar. 2, 2017); *Sumpter v. Colvin*, Civ. A. No. 13-988, 2014 WL 1259604, at *5 (E.D. Pa. Mar. 27, 2014); *Johnson v. Colvin*, Civ. A. No. 14-78-JFM, 2014 WL 6063435, at *2 (W.D. Pa. Nov. 12, 2014). These cases do not support Plaintiff's position that the POMS provisions are judicially enforceable and require remand as a matter of law in the situation presented here. Therefore, the Court concludes Plaintiff has not shown that this case must be remanded as a matter of law for further explanation of the ALJ's application of the light grid rule instead of sedentary grid rule on the basis alleged.

## B. *Grid Rules Determination*

Plaintiff contends that the ALJ's findings require a determination of disability under the grid rules because the RFC effectively limits him to sedentary work. (Doc. 12 at 6.) Defendant responds that the ALJ was not obligated to find Plaintiff disabled because of his capacity for occasional standing and walking. (Doc. 13 at 10.) The Court concludes that Plaintiff the ALJ's determination that Plaintiff has the RFC for a limited range of light work is not supported by substantial evidence.

Plaintiff does not argue that the RFC is deficient because it does not include limitations supported by the record. Rather, he

19

presents legal argument which is essentially twofold.  Plaintiff
points to the ALJ's limitation to "occasional" standing and walking
as indicative of the capacity for sedentary work which required the
application of the sedentary grid rule and a finding of disability.
(Doc. 12 at 4-5; Doc. 14 at 1.)  He also asserts error on the basis
that the ALJ was not entitled to rely on evidence presented by the
VE because it is inconsistent with the Agency's regulatory
definition of light work: unless he "can stand and walk for between
1/3 to 2/3 of an 8-hour day, then he cannot perform even the
minimum level of standing, walking, lifting, and carrying required
for light work as the Agency defines that term."  (Doc. 12 at 9
(citing SSR 83-10, 1983 WL 31251, at *5-6; 20 C.F.R. §§
404.1567(b), 417.967(b)).)  The applicable exertional level is
determinative in this case: if Plaintiff were assessed at the
sedentary exertional level, he would be found disabled because the
grid rules require such a finding based on his age (an individual
aged 50-54 is an individual "closely approaching advanced age") and
vocational factors.  (Doc. 12 at 6-8 (finding of disabled required
under 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14)
(other citations omitted).)

      The regulations governing physical exertional requirements
provide the following definitions:

                  (a) . . . Sedentary work involves lifting no
                  more than 10 pounds at a time with frequent
                  lifting or carrying articles like docket
                  files, ledgers, and small tools.  Although a

20

sedentary job is defined as sitting, a
certain amount of walking and standing is
often necessary in carrying out job duties.
Jobs are sedentary if walking and standing
are required occasionally and other sedentary
criteria are met.

(b) . . . Light work involves lifting no more
than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to
10 pounds.  Even though the weight lifted may
be very little, a job is in this category
when it requires a good deal of walking or
standing or when it involves sitting most of
the time with some pushing and pulling of arm
or leg controls.  To be considered capable of
performing a full or wide range of light
work, you must have the ability to do
substantially all of these activities.  If
someone can do light work, we determine that
he or she can also do sedentary work, unless
there are additional limiting factors such as
loss of fine dexterity or inability to sit
for long periods of times.

20 C.F.R. §§ 404.1567, 416.967.  Social Security Ruling 83-10, 1983

WL 31251 (S.S.A.), provides additional guidance and definitions for

terms used in the regulations cited: "occasionally" in the

sedentary work context means occurring from very little to up to

one-third of the time; "[s]ince being on one's feet is required

'occasionally' at the sedentary level of exertion, periods of

standing and walking should generally total no more than 2 hours of

an 8-hour workday"; "frequent" in the light work context means from

one-third to two-thirds of the time; "[s]ince frequent lifting or

carrying requires being on one's feet up to two-thirds of a

workday, the full range of light work requires standing or walking,

off and on, for a total of approximately six hours of an 8-hour

workday." *Id.* at *5-6. The "light work" definition includes the notation that "[e]ven though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking and standing--the primary difference between sedentary and most light jobs." *Id.* at *5. Regarding the light jobs performed in a seated position, SSR 83-10 notes that the pushing and pulling requirements for such a job require greater exertion than in sedentary work. *Id.* The rule then gives examples of skilled and semiskilled jobs in this category and notes that "relatively few unskilled light jobs are performed in a seated position." *Id.*

Given the Agency's regulatory definitions and explanations regarding the meaning of the regulatory terms, ALJ Cutter's limitation of Plaintiff to occasional standing and walking means that Plaintiff can stand and walk for up to one-third of the day and he can lift or carry objects weighing up to ten pounds for up to one-third of the day as a result of the stand/walk limitation. 20 C.F.R. §§ 404.1567(a), (b), 416.927(a), (b); SSR 83-10, 1983 WL 31251, at *5. The latter limitation is based on SSR 83-10's notation that "lifting or carrying requires being on one's feet."[7]

---

[7] Defendant notes that "there is no authority for the proposition that a person could not lift light objects (up to 10 pounds) from a seated position, as other judges have rightly recognized." (Doc. 13 at 21 (citing *Hence v. Astrue*, Civ. A. No. 4:12CV1, 2012 WL 6691573, at *7 (E.D. Va. Nov. 30, 2012)).) *Hence* does not discuss the correlation in SSR 83-10 of "lifting or carrying" with requiring "being on one's feet." 1983 WL 31251, at

1983 WL 31251, at *5. Plaintiff's walking/standing and lifting/carrying capabilities are less than required for light work; his walking and standing capabilities are consistent with sedentary work; and his resultant lifting and carrying capabilities arguably exceed the sedentary level because lifting/carrying ten pounds occasionally is greater than "lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), (b), 416.927(a), (b); SSR 83-10, 1983 WL 31251, at *5. Plaintiff's limitation to frequent pushing and pulling (R. 14) appear to be consistent with light work seated positions though Plaintiff is limited to unskilled work (*see* R. 42). Therefore, Plaintiff's limitations fall between two rules and these rules direct opposite conclusions: if Plaintiff's exertional capacity were considered sedentary, he would be determined disabled, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14; if his exertional capacity were considered light, no finding of disability

---

*6. Thus, it is the Agency's own explanation of the regulatory definition that connects "lifting or carrying" with walking/standing. (The explanation could have, but does not, say that only frequent carrying requires being on ones' feet.) But for the Agency's explanation of the regulatory definition, the Court would agree with Defendant that the regulatory disjunctive-- "lifting *or* carrying," 20 C.F.R. §§ 404.1567(b), 416.927(b) (emphasis added)--does not preclude lifting from a seated position. In some instances, courts have concluded that regulatory definitions, not explanatory rulings, control. *See, e.g., Hamm v. Colvin*, Civ. A. No. 1:15-CV000778, at *11 (M.D. Pa. Sept. 30, 2016). However, Defendant does not make that argument here and the cases discussed in the text do not draw such a distinction in similar circumstances.

would be directed.

Plaintiff argues in this situation the sedentary grid rule must be applied to him because SSR 83-12 "*mandates* application of the lower Grid rule, where, as here, a claimant's exertional capacity falls between two rules but is significantly reduced from the higher exertional rule," (Doc. 14 at 1 (citing SSR 83-12, 1983 WL 31253, at *2) (emphasis added)). While SSR 83-12 applies here, the rule does not speak in mandatory terms. Rather, an ALJ is afforded discretion in these circumstances. SSR 83-12 addresses the situation where "the exertional level falls between two rules which direct opposite conclusions" and "the exertional capacity is significantly reduced in terms of the regulatory definition." SSR 83-12, 1983 WL 31253, at *2. The "Adjudicative Guidance" regarding this situation does not "mandate" application of the lower grid rule as asserted by Plaintiff (Doc. 14 at 1), but states that a significant reduction "*could* indicate little more than the occupational base for the lower rule and *could* justify a finding of 'Disabled.'" SSR 83-12, 1983 WL 31253, at *2 (emphasis added). Guidance on the situation where two rules direct different conclusion continues:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of regulatory criteria for exertional ranges of work, more difficult judgments are involved in the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly,

24

> [vocational specialist] assistance is
> advisable for these types of cases.

*Id.* at *3. While Plaintiff's limitations appear more consistent with sedentary work than with light work, the Court does not find that the ALJ erred as a matter of law in choosing to consult a VE rather than applying the lower exertional level based on the advisory nature of the language used in SSR 83-12.

Despite the conclusion that neither the POMS nor SSR 83-12 require remand or reversal as a matter of law, the Court finds the ALJ's RFC determination problematic: without any discussion of the assignment of the light exertional capacity in spite of the reductions discussed above, the Court cannot conclude that the outcome determinative designation is supported by substantial evidence.

Both parties cite numerous cases in support of their respective positions on whether the ALJ was entitled to rely on VE testimony to support his RFC. (Doc. 12 at 9-10; Doc. 13 at 13-15.) The only Third Circuit case cited is *Young v. Astrue*, 519 F. App'x 769 (3d Cir. 2013) (not precedential), where the Third Circuit panel concluded that the ALJ was entitled to rely on VE testimony when the plaintiff was limited to a narrow range of light work which included a specific limitation to standing or walking for no more than two hours in an eight-hour day. Plaintiff merely references the case as inappropriately relied upon in *Ambrose v. Colvin*, Civ. A. No. 3:14-CV-1618, 2015 WL 877790, at *15 (M.D. Pa.

Mar. 2, 2015), because *Young* involved a *pro se* plaintiff who did not raise the arguments raised here (Doc. 12 at 11 n.9); Defendant notes that *Young* is consistent with "the wide breadth of caselaw" which affirms the process followed here (Doc. 13 at 20). Because the Court of Appeals for the Third Circuit "steadfastly attempt[s] to discourages District Courts from relying on nonprecedential opinions," *Jamison v. Klem*, 544 F.3d 266, 279 n.11 (3d Cir. 2008), the Court considers *Young* of equal persuasive weight to the District Court decisions within the Circuit upon which the parties rely.

District Court decisions within this Circuit have cited *Young* in support of the proposition that an ALJ did not err in his determination that a claimant had the RFC to perform a "narrow range of light work," where the RFC included standing and walking no more than two hours in an eight-hour day and lifting no more than ten pounds frequently and twenty pounds occasionally. *Wiggins v. Berrhill*, Civ. A. No. 16-3991, 2017 WL 1532038, at *7 (E.D. Pa. February 24, 2017) (citing *Young*, 519 F. App'x at 771-72)[8]; *Ambrose v. Colvin*, Civ. A. No. 3:14-CV-1618, 2015 WL 877790, at *15 (M.D. Pa. Mar. 2, 2015) (citing Young, 519 F. App'x at 771). Though both cases relied on *Young*, they did so without extensive discussion.

---

[8] The Report and Recommendation was adopted by Order of United States District Judge Wendy Beetlestone. *See Wiggins v. Berryhill*, Civ. A. No. 16-3991 (E.D. Pa. filed April 26, 2017).

Furthermore, in *Ambrose*, the Court concluded that the plaintiff's capability of standing/walking occasionally equated with walking up to one-third of an eight-hour day and, because light work involves standing or walking "as little as one-third of the time," the plaintiff's capabilities were potentially equal to the light work requirements. 2015 WL 877790, at *15. This rationale blurs a distinction set out in the regulations and the Agency's definition of those terms: occasionally is "*up to* one-third of the time"; frequently is "*from one third* to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6 (emphasis added). By definition, the categories butt up against one another, they are not the same. *Id.* Thought Defendant did not rely on *Wiggins*, the Court notes that the plaintiff was a younger individual who was limited to standing and walking for two hours in an eight-hour day, an important distinction with the case at bar because the distinction between sedentary and light work rules did not direct different conclusions for a younger individual. This same distinction applies to a case cited by Defendant, *Palmer v. Colvin*, Civ. A. No. 1:15-CV-00704, 2016 WL 5817240 (E.D. Pa. Aug. 25, 2016), where the plaintiff was a younger individual and the court noted that, even if the plaintiff had "successfully argued that standing for two hours or less is inconsistent with light work, the VE also testified that there were

27

sedentary jobs that [the plaintiff] could perform."[9]  *Id.* at *3, 5.

Here the ALJ asked the VE only about an individual who had the residual functional capacity to perform a "range of light work as defined in the regulations" subject to certain limitations, including those dealing with sitting, standing, pushing and pulling.  (R. 41.)  The VE identified light occupations that are "performed in a seated position or have a sit, stand option associated with them."  (R. 43.)  He did not discuss other occupations at the sedentary level or offer any related to the considerations addressed in SSR 83-12 or SSR 83-10.  Therefore, the VE testimony does not provide an explanation that would render the ALJ's failure to provide one harmless.

Given Plaintiff's age, vocational profile, identified limitations, and the remedial nature of the statute, see, e.g., *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979), the Court concludes that the better course here is to follow those cases within the Third Circuit where the potentially outcome dispositive nature of the assigned exertional level were deemed cause for remand.  *Ford v. Colvin*, Civ. A. No. 1:14-CV-01046, 2015 WL 4608136 (D. Del. July 31, 2015); *Riley v. Colvin*, Civ. A. No.

---

[9]  In other cases within the Third Circuit cited by Defendant (Doc. 13 at 14), the plaintiffs' stand/walk limitations exceeded one-third of the day, therefore the inconsistency discussed in the text did not apply.  *Lackey v. Colvin*, Civ. A. No. 12-516, 2013 WL 1903662, at *2 (W.D. Pa. May 7, 2013); *Dick v. Colvin*, Civ. A. No. 13-1308, 2014 WL 3530004, at *8 (W.D. pa. July 15, 2014).

3:13-CV-1223, (M.D. Pa. Sept. 26, 2014); *Campbell v. Astrue*, Civ. A. No. 04-5356, 2010 WL 4689521 (E.D. Pa. Nov. 2, 2015). Both *Ford* and *Campbell* addressed situations where the ALJ had found a plaintiff in the "closely approaching advanced age" category capable of a limited range of light work with walk/stand limitations for two hours in an eight-hour day. *Ford*, 2015 WL 4608136, at *3, 6; *Campbell*, 2010 WL 4689521, at *1, 5. Both concluded that remand was required for further explanation of the assigned exertional level due to the inherent contradiction between a finding that the plaintiff could lift frequently (between three and six hours) but be on his feet for only up to two hours. *Ford*, 2015 WL 4608136, at *8; *Campbell*, 2010 WL 4689521, at *5-6. The Court is aware that both *Ford* and *Campbell* contain a more clear distinction between sedentary and light exertional levels because the stand/walk limitations are greater and two hours in an eight-hour day does not butt up against "frequent" as does Plaintiff's "occasional" stand/walk limitation. However, because there *is* a distinction between occasional and frequent and because the level classification is outcome determinative, remand for clarification is the appropriate course.[10] *Id.; see also Riley*, 2014 WL 4796602,

---

[10] The Regulations indicate that a capability of performing a "*full or wide range of light work*" requires the individual to do substantially all of the listed activities and SSR 83-10 explains that a "*full range* of light work requires being on one's feet for a total of approximately six hours in an eight-hour day." 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251, at *6 (emphasis added). Though being found capable of a limited range of

at *8.

## V. Conclusion

For the reasons discussed above, the Court concludes that Plaintiff's appeal is properly granted.  This matter is remanded to the Acting Commissioner for further explanation consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: May 15, 2017

---

light work alleviates these requirements, it does not necessarily
follow that the exertional level should be assigned when the
claimant does not have the capability of performing most of the
defined activities at even the minimum level identified.